25 C.C.P.A.(Patents)

## In re FISCHER.
## Patent Appeals No. 3971.

Court of Customs and Patent Appeals.
June 27, 1938.

Albert F. Robinson, of Lockland, Ohio, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting claims 1 to 15, inclusive, of appellant's application for a patent. Certain claims were allowed by the Examiner.

Certain of the claims were rejected for want of disclosure in the application as originally filed, and certain of them were rejected upon the ground of lack of patentability over the prior art.

Claims 1 and 12 are illustrative and read as follows:

"1. The method of making construction units which comprises extruding plastic material into a continuous sheet of irregular thickness transversely, subjecting same to pressure means, and thereafter dividing the continuous sheet into units.

"12. A continuous method of making construction units comprising mixing together a bituminous binder and filling material in a warm plastic mass, feeding the mass to an extruding device while in a warm plastic condition, heating the extruding device, and then extruding said mass into sheets of desired form except as they may be cut in various lengths."

The reference cited is: McCool, 1,427,-831, September 5, 1922.

The application relates to extruding sheet material, and the general subject matter is described by the Board of Appeals as follows:

"The subject matter on appeal relates to a method of making construction sheet material and comprises three steps; first, feeding a warm plastic material to an ex- trusion device to form a relatively thick continuous sheet; second, immediately thereafter subjecting the strips to pressure means to reduce to an ultimate thickness; third, thereafter dividing same into units."

The patent to McCool relates to a method of making bricks, and the process is described by the Board of Appeals in its decision as follows:

"McCool describes a method of making bricks. The brick is formed of finely divided organic or woody aggregate united into a solid mass by a bituminous binder. The raw materials are placed in a mixer, which is heated to a certain degree, to make the material plastic and yet not sticky or viscous, so that it will generate pressure necessary for die working and then passed through a heated die and to a cutter. The material is cooled and after cutting to brick size, put into a press to form the final brick."

The history of appellant's application is stated by the Examiner as follows:

"This is a renewal application. Before renewal claims 11 and 12 were finally rejected on McCool and claims 5 to 10 were allowed. Claim 13 was entered for appeal. The Board of Appeals affirmed the rejection (paper no. 15). The Board stated 'nor is the third step of severing the material described and the claims are therefore not supported by the disclosure. The claims are rejected additionally for this reason.' This additional rejection returned the prosecution to the Examiner. As this additional rejection of claims 11, 12 and 13 applied as well to allowed claims 5 to 10, the Examiner on May 5, 1933, requested jurisdiction for the purpose of applying such rejection to claims 5 to 10. The request was refused. On appeal from the final rejection of claims 11, 12 and 13 on the new ground, the Broad (paper no. 30) reconsidered its prior action *in toto* and affirmed the final rejection of the claims on all grounds. Thereafter, applicant having cancelled claims 11, 12 and 13, the case was passed to issue on October 20, 1934, with 6 claims, the claims 5 to 10 being renumbered from 1 to 6. On April 17, 1935, applicant renewed the application and at the same time added claims 7 to 10. All of the claims were then rejected (paper no. 34) on the one ground raised by the Board as an additional ground in its decisions dated December 29, 1932 (paper no. 15)

and affirmed by it on April 11, 1934 (paper no. 30). In his response, applicant added claims 11 to 21 (paper no. 35). On October 31, 1935 (paper no. 36), claims 1 to 15 were finally rejected and claims 16 to 21 were allowed."

Claims 1 to 10, inclusive, of the renewal application were rejected upon the ground that they are not properly supported by appellant's original disclosure. Each one of these claims includes the step of dividing a continuous sheet into units as a final step in the method. The only basis for this step found in appellant's disclosure is the statement therein that one of the special features of the invention is "the extrusion of pipe coverings, rail fillers, blocks and sheets of varying thicknesses thru an extruder as described, without further reduction *except as they may be cut in various lengths.*" (Italics ours.) The Board of Appeals held that this statement was too indefinite to support a positive step of cutting the material into various lengths.

■ We are in agreement with this view. Appellant claims that the element of cutting the sheet in various lengths is of no patentable significance, as the feature is well known in the art and is disclosed in the McCool patent; that the only significance of this element is to indicate the sequence of the process steps, thus distinguishing the claims from the prior art.

Inasmuch as appellant's specification does not disclose cutting the sheets as a positive element of his invention, it is our opinion that these claims are not allowable. If these claims were allowed and an interference between appellant and some other inventor were declared on these or similar claims, said other inventor having disclosed the cutting of the sheets as a positive element, it seems to us that, under the well established rule that all limitations in claims are deemed to be material limitations, it would necessarily be held that appellant could not make such claims because of lack of disclosure in his specification of the element of cutting the sheets in lengths.

Claims 7 to 10, inclusive, were also rejected on the patent to McCool. Inasmuch as we affirm the action of the Patent Office tribunals in the rejection of these claims upon the ground of lack of disclosure in appellant's specification, it is unnecessary to consider this additional ground of rejection of these claims.

Claims 11 to 15, inclusive, omit the cutting into lengths as a positive element in the process, and also omit subjecting the sheet to pressure after extrusion, set forth as positive elements in claims 1 to 10, inclusive. The Board of Appeals stated, with respect to claims 11 to 15, as follows:

"Claims 11-15 omit the positive step of cutting the sheet into lengths and rely for patentability on the step of retaining the plastic material warm while subjecting to extrusion as disclosed by McCool, in whose patent the material is heated in chamber 15 and extruded through the die 23. These claims are clearly unpatentable."

■ While it is true that McCool states that his initially heated bituminous material is allowed to cool and is then reheated when put through the extruder, we see nothing inventive in omitting this initial cooling step. It is clear from reading the McCool patent that cooling the initially heated bitumen was beneficial, and there is nothing in appellant's specification to indicate that appellant was of the opinion that there was anything inventive in omitting the cooling of the initially heated material. His specification states:

"The material which is thus extruded can be first mixed in suitable mixers which may be steam-heated or not, as required, and the mixture then conveyed to the extruder. Where an extremely wet mixture is made, the surplus liquid may first be drained off and then the batch placed in the extruder, the pressure draining off additional liquid when pressing thru the die or nozzle.

"In the first process I prefer to use heated, plastic material, which may be in a flowable or non-flowable condition, and in which the binder is preferably bituminous material of a high melting point asphalt. * * *"

In McCool a die is attached to the extruder, and both the extruder and die are heated to the critical temperature necessary to render the material sufficiently plastic to be worked, and the material is "simultaneously shaped into brick or other forms."

We think the Board of Appeals came to the correct conclusion, and its decision is affirmed.

Affirmed.